No. 25-10889-HH

In the
United States Court of Appeals
for the Eleventh Circuit

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

KENNETH RIDGARD,
*Defendant-Appellant*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
NO. 6:05-CR-193-PGB-DAB-1

---

**BRIEF OF THE UNITED STATES**

---

GREGORY W. KEHOE
United States Attorney

HOLLY GERSHOW
Assistant United States Attorney
Deputy Chief, Appellate Division

GERMAINE SEIDER
Assistant United States Attorney
Appellate Division
Florida Bar No. 85968
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000

December 8, 2025

## Statement Regarding Oral Argument

The United States does not request oral argument.

# Table of Contents

Statement Regarding Oral Argument ................................................................. i

Table of Contents ............................................................................................. ii

Table of Citations .......................................................................................... iv

Statement of Jurisdiction ............................................................................. vii

Statement of the Issue ..................................................................................... 1

Statement of the Case ..................................................................................... 1

    *Course of Proceedings* ................................................................................... 2

    *Statement of the Facts* .................................................................................. 2

        I.    Ridgard's 2006 Sentencing for Two Child-Pornography Offenses ........................................................ 2

            A. PSR ................................................................................. 5

            B. Sentencing ....................................................................... 6

        II.   Ridgard's 2017 Revocation ............................................... 7

            A. Violation Petition ............................................................. 9

            B. Revocation Hearing ....................................................... 10

        III.  Ridgard's 2020 Revocation ............................................. 14

            A. Violation Petition ........................................................... 15

            B. Revocation Hearing ....................................................... 16

IV.    Ridgard's 2025 Revocation ............................................... 17

    A. Violation Petition......................................................... 20

    B.  Revocation Hearing .................................................. 21

*Standard of Review* ...................................................................... 24

Summary of the Argument ......................................................... 24

Argument and Citations of Authority ........................................ 25

    The district court, upon revoking Ridgard's supervised release a
    third time, did not plainly err when it sentenced Ridgard to two
    imprisonment terms and two supervised-release terms ........................ 25

    A.    The invited-error doctrine precludes review of
    Ridgard's challenge to the district court's imposition
    of his revocation sentence ............................................... 27

    B.    In any event, Ridgard has not shown that the district
    court plainly erred in imposing his revocation sentence .... 30

    (1)    At Ridgard's 2006 sentencing, the district court
    imposed an undivided sentence covering both
    counts of conviction ............................................... 33

    (2)    The court at the 2017 and 2020 revocations
    imposed a sentence covering both counts of
    conviction ............................................................ 39

Conclusion................................................................................ 43

Certificate of Compliance with Type-Volume Limitation

Certificate of Service

# Table of Citations

## Cases

*Benson v. United States*,
   332 F.2d 288 (5th Cir. 1964) ................................................................. 34

*United States v. Aguillard*,
   217 F.3d 1319 (11th Cir. 2000) ......................................................24, 31

*United States v. Cobbs*,
   967 F.2d 1555 (11th Cir. 1992) ............................................................. 32

*United States v. Dillon*,
   725 F.3d 362 (3d Cir. 2013) ...........................................................27, 38

*United States v. Eskridge*,
   445 F.3d 930 (7th Cir. 2006) ................................................................. 35

*\*United States v. Gresham*,
   325 F.3d 1262 (11th Cir. 2003) ............................................................. 35

*United States v. Hollins*,
   664 F. App'x 779 (11th Cir. 2016) ....................................................39, 40

*United States v. Lejarde-Rada*,
   319 F.3d 1288 (11th Cir. 2003) ............................................................. 33

*\*United States v. Love*,
   449 F.3d 1154 (11th Cir. 2006) ................................................. 24, 28, 30

*\*United States v. Moriarty*,
   429 F.3d 1012 (11th Cir. 2005) ......................................................34, 35

*United States v. Olano*,
   507 U.S. 725 (1993) ......................................................................24, 33

*United States v. Pla,*
   345 F.3d 1312 (11th Cir. 2003) ............................................................. 24

*United States v. Quinones*,
   136 F.3d 1293 (11th Cir. 1998) ............................................................. 26

*United States v. Sirvestri,*
  409 F.3d 1311 (11th Cir. 2005)............................................................27, 28

*\*United States v. Smith,*
  532 F.3d 1125 (11th Cir. 2008)............................................................24, 32

*United States v. Sosa,*
  782 F.3d 630 (11th Cir. 2015)................................................................. 41

*United States v. Starnes,*
  376 F. App'x 942 (11th Cir. 2010) .......................................................37, 38

**Statutes**

18 U.S.C. § 2252A.................................................................................. 26

18 U.S.C. § 2252A(a) ............................................................................. 36

18 U.S.C. § 2252A(a)(2)(B)................................................................... 4, 26

18 U.S.C. § 2252A(a)(5) ......................................................................... 26

18 U.S.C. § 2252A(a)(5)(B).................................................................... 4

18 U.S.C. § 3231 .............................................................................. vii, 32

18 U.S.C. § 3553(a) ............................................................................... 11

18 U.S.C. § 3559(a)(3) ........................................................................... 26

18 U.S.C. § 3583 .................................................................................... 5

18 U.S.C. § 3583(b)(3) ........................................................................... 26

18 U.S.C. § 3583(e) ............................................................................... 29

18 U.S.C. § 3583(e)(3) ....................................................................... 21, 25–27

18 U.S.C. § 3583(h) .......................................................................10, 25–27, 29

18 U.S.C. § 3583(k) ..........................................................................5, 26, 27

18 U.S.C. § 3584 ..............................................................................21, 29

18 U.S.C. § 3624(e) ............................................................................... 36

v

18 U.S.C. § 3742(a) ...................................................................... vii

28 U.S.C. § 1291 ......................................................................... vii

**Rules**

11th Cir. R. 28-5 ............................................................................. 1

Fed. R. App. P. 4(b) ..................................................................... vii

**Other Authorities**

USSG §5D1.2(a)(2) ......................................................................... 5

USSG §5D1.2(b)(2) ......................................................................... 5

USSG §7B1.1(a) ........................................................................ 10, 21

USSG §7B1.3(a) ........................................................................ 10, 21

USSG §7B1.4(a) ........................................................................ 10, 21

## Statement of Jurisdiction

This is an appeal from a final judgment of the United States District Court for the Middle District of Florida in a criminal case. That court had jurisdiction. *See* 18 U.S.C. § 3231. The court entered the judgment for revocation of supervised release against Kenneth Ridgard on March 13, 2025, Doc. 179, and Ridgard timely filed a notice of appeal on March 17, 2025, Doc. 180. *See* Fed. R. App. P. 4(b). This Court has jurisdiction over this appeal, *see* 28 U.S.C. § 1291, and authority to examine Ridgard's challenge to his sentence, *see* 18 U.S.C. § 3742(a).

## Statement of the Issue

Did the district court, upon revoking Ridgard's supervised release a third time, plainly err when it sentenced Ridgard to two imprisonment terms and two supervised-release terms?

## Statement of the Case[1]

Kenneth Ridgard was convicted in 2006 of two federal child-pornography offenses for which the district court sentenced him to 151 months' imprisonment to be followed by 5 years' supervised release. The court then revoked his supervised release in 2017, 2020, and 2025, and each time sentenced him to a new term of imprisonment to be followed by a new term of supervised release. In this appeal, Ridgard challenges his 2025 sentence—a term of 48 months' imprisonment, which consists of a 24-month term for one of his counts of conviction and a consecutive 24-month term for the other, to be followed by a lifetime tern of supervised release, which consists of two concurrent lifetime terms. Although Ridgard at his 2025 revocation hearing had asked the court to impose concurrent prison terms, he now argues for the first time on appeal that the court could not have imposed more than a single

---

[1] We cite pages of a transcript using "the page number that appears in the header generated by the district court's electronic filing system." 11th Cir. R. 28-5.

1

prison term to be followed by a single supervised-release term because, according to Ridgard, there was only one supervised-release term to revoke.

### *Course of Proceedings*

In 2006, the district court adjudicated Ridgard guilty of two child-pornography offenses and sentenced him to serve 151 months' imprisonment to be followed 5 years' supervised release. Doc. 46; Doc. 87 at 16. In 2017, the court revoked Ridgard's supervised release and sentenced him to serve 22 months' imprisonment to be followed by a lifetime of supervised release. Doc. 79; Doc. 98 at 39–40. In 2020, the court revoked supervised release and sentenced Ridgard to serve seven months' imprisonment to be followed by ten years' supervised release. Doc. 12; Doc. 193 at 19. In 2025, the court revoked supervised release and sentenced Ridgard to serve 48 months' imprisonment—consisting of a 24-month term for Count One and a consecutive 24-month term for Count Two—to be followed by a lifetime of supervised release. Doc. 179; Doc. 194 at 24–25. This appeal followed.

### *Statement of the Facts*

### I.    Ridgard's 2006 Judgment for Two Child-Pornography Offenses

In December 2004, Ridgard messaged an undercover agent—who was pretending to be a mother of a 10-year-old daughter—in an internet chatroom

named "Preteen Toddler & Baby Sex:1." Presentence Investigation Report, dated February 2006 ("PSR") ¶ 1.[2] The two began chatting, and Ridgard told the agent that he wanted to engage in sexual activity with her daughter and asked the agent for a photo of her daughter. *Id.* ¶¶ 7, 10. Ridgard, then employed at Universal Studios in Orlando, Florida, told the agent that he'd give her free passes to the theme park if she and her daughter would come to meet him. *Id.* ¶¶ 13, 64. Ridgard also told the agent that he was "not a cop" but rather "a horny pedophile" who had been searching the internet for child pornography. *Id.* ¶¶ 7, 10. To prove it, Ridgard emailed the agent multiple child-pornography photos. *Id.* at ¶¶ 7–9.

The agent's investigation, which confirmed Ridgard's possession of child pornography, led to the February 2005 execution of a search warrant at Ridgard's residence. *See* PSR ¶¶ 11–15. There, the agents interviewed Ridgard, who admitted that he had engaged in an online chat with the undercover agent about using her children for oral sex and intercourse, that she had agreed to bring her children to him, that he had planned to bring her and the children to

---

[2]The presentence investigation report (PSR) is included in the United States Probation Office's 2017 Violation Packet, 2019 Violation Packet, and 2025 Violation Packet. Each of those packets includes, among other documents, the pertinent petition that sets forth the violations charged, the probation office's violation report, the September 2006 judgment for Ridgard's original child-pornography offenses, and the February 2006 PSR prepared for his sentencing on those original offenses.

a motel for purposes of sexual activity, and that he had intended to give the agent free passes to Universal Studios in exchange for him engaging in sexual activity with her children. *Id.* ¶¶ 15–16. Ridgard also said that he had been entering child-exploitation chatrooms for approximately one year, that he was interested in children under age 12, and that he would meet people who claimed to have children in that age group. *Id.* ¶ 17.

Further, Ridgard admitted that he had kept child pornography on his laptop computer, external hard-drive, and multiple CD-ROMS. PSR at ¶ 18. Indeed, a search of the media seized from Ridgard's residence revealed over 3,350 child-pornography images, 21 child-pornography videos, and 23 emails that included child pornography. *Id.* ¶ 19.

In November 2005, a grand jury returned a two-count indictment against Ridgard, charging him for his: (1) December 2004 transmission of child pornography in interstate commerce by computer, in violation of 18 U.S.C. § 2252A(a)(2)(B) (Count One); and (2) February 2005 possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Two). Doc. 13. Ridgard pleaded guilty to both counts pursuant to a plea agreement with the United States, and the district court accepted his plea. *See* Docs. 30, 34, 36.

4

**A.   PSR**

In the "sentencing options" portion of the PSR, *see* PSR ¶¶ 72–88, the United States Probation Office provided the statutory penalties for Ridgard's two counts of conviction. Ridgard faced a term of imprisonment of five to twenty years for Count One, and up to ten years' imprisonment for Count Two. *Id.* ¶¶ 72–73. As to each of Counts One and Two, he faced a supervised-release term of any number of years up to life. *Id.* ¶ 78; *see* 18 U.S.C. § 3583(k) (effective Apr. 2003 to July 2006).[3]

To calculate the United States Sentencing Guidelines range, the probation office grouped Counts One and Two together, PSR ¶ 26, and recommended a guideline imprisonment range of 151 to 188 months, *id.* ¶ 74. Further, because Counts One and Two were both class C felonies and sex offenses, *see* PSR at 1, the probation office provided that "the guideline range for a term of supervised release is two years to life, as to each count," *id.* ¶ 80 (citing USSG §§5D1.2(a)(2) and (b)(2)).[4]

---

[3]The version of 18 U.S.C. § 3583 that applies is the one that was in effect when Ridgard committed his December 2004 and February 2005 offenses of conviction.

[4]The probation office applied the November 2005 edition of the United States Sentencing Guidelines Manual. PSR ¶ 25.

### B.    Sentencing

At the September 2006 sentencing, the district court adopted the PSR's undisputed factual statements and guideline calculations. Doc. 87 at 7–8. The United States requested a sentence of 188 months' imprisonment, emphasizing Ridgard's attraction to children and the need to protect victims from the perpetration of child-pornography production by people like Ridgard who derive pleasure from watching children being tortured. *Id.* at 10–11. Ridgard requested a five-year, mandatory-minimum term of imprisonment or, alternatively, a sentence at the bottom of the 151-to-188-month guideline range. *Id.* at 9–10. Also, noting that his prior attempts at counseling had failed to treat his attraction to children, Ridgard requested sex-offender treatment both in prison and on supervised release. *Id.* at 8–9; *see also id.* at 13–14 (court noting that Ridgard had discontinued pedophile counseling, *see* PSR ¶ 51, but requests sex-offender treatment while in custody, *see* PSR ¶ 57).

The district court discussed the sentencing factors considered and expressly noted the facts, guideline calculations, and sentencing options set forth in the PSR. Doc. 87 at 12–16. The court then pronounced a bottom-of-the-guideline-range sentence, stating that Ridgard was "to be imprisoned for a term of 151 months" and, upon release from imprisonment, "shall be placed on supervised release for a term of five years." Doc. 87 at 16. As to the latter,

the court requested that Ridgard "be afforded residential and outpatient sex offender treatment as needed during the period of supervised release"; ordered Ridgard to comply with the standard conditions of supervision; and pronounced the special conditions of supervision. *Id.* at 16–20.

In explaining its reasons for sentencing Ridgard at the bottom of the guidelines range, the court said that Ridgard had no prior conviction for child pornography—though the court in no way thought that this was Ridgard's first time being involved in child pornography—and had pleaded guilty. *Id.* at 16, 21–22. Further, the court noted that, if any problems occurred while Ridgard was on supervised release, the court could revoke supervised release and send him back to prison. *Id.*

The court's judgment stated that Ridgard had been adjudicated guilty of Counts One and Two, Doc. 46 at 1, and sentenced to serve a total term of 151 months' imprisonment to be followed by a term of 5 years' supervised release, *id.* at 2–3. The judgment set forth all the supervised-release conditions— mandatory, standard, and special conditions—with which Ridgard must comply while on supervised release. *Id.* at 3–4.

## II.    Ridgard's 2017 Revocation

In September 2016, upon his release from prison, Ridgard began serving his supervised-release term at a transitional housing community for registered

sex offenders. *See* Probation Office's Amended Petition for Offender Under Supervised Release, dated Sept. 5, 2017 ("2017 Petition").[5] It was not long until he violated his supervision conditions.

As Ridgard would later admit to the probation office, he bought a tablet in October 2016 and used it to view and download child pornography. Probation Office's Violation Memorandum, dated Sept. 5, 2017 ("2017 Violation Memo") at 1. He regularly did so until March 2017, when he crushed the tablet and discarded its parts in random ditches in the Apopka area. *Id.* at 1–2. Around the time that he destroyed his tablet, however, Ridgard used another housing-community resident's cellphone to view child pornography on multiple occasions. *Id.* at 1. Ridgard also used a friend's cellphone to view child pornography on multiple occasions. *Id.*; *see also id.* at 2. And Ridgard had contact with several children—shaking their hands after they'd been baptized—at church on Easter Sunday. *Id.* at 2.

Meanwhile, on three occasions in February and March 2017, Ridgard had lied to his probation officer, claiming that he had not accessed the internet when in fact he regularly had been doing so since starting supervision. *Id.* at 1.

---

[5]The 2017 Petition is included in the probation office's 2017 Violation Packet, *see* U.S. Supplemental Appendix, which the probation office provided the district court before the final-revocation hearing.

## A.    Violation Petition

In July 2017, the probation office petitioned the district court to issue a summons or warrant for Ridgard's arrest on the basis that Ridgard had violated his supervised release conditions. *See* 2017 Petition at 2 (amending Probation Office's Petition for Summons or Warrant for Supervised-Release Offender, dated July 14, 2017). Specifically, the probation office alleged that Ridgard: (1) on three occasions failed to answer truthfully when his probation officer inquired about his internet usage; (2) viewed child pornography on multiple occasions via a friend's cellphone and another housing-community resident's cellphone; and (3) used a computer tablet that he had purchased to view and download child pornography. 2017 Petition at 1–2; 2017 Violation Memo at 1–2; *see* Doc. 46 at 3–4.

The probation office identified Ridgard's two original offenses (transmitting child pornography in interstate commerce by computer, and possession of child pornography) and resulting sentence ("151 months [of] custody followed by 60 months of supervised release"). *See* 2017 Petition at 1. The probation office provided that, upon revoking supervised release, the court may impose an imprisonment term of no more than two years if the original offense is a class C felony. *See* Violation Memo at 2. Further, based on Ridgard's criminal-history category at his original sentencing and a grade C

9

violation charge, the guideline range was three to nine months' imprisonment. *Id.* (citing USSG §§ 7B1.1(a), 7B1.3(a), and 7B1.4(a)).

## B.    Revocation Hearing

At the revocation hearing, Ridgard admitted Violation Charge One, and the United States moved to dismiss the other two violation charges. *See* Doc. 98 at 3–4; *see also* Docs. 72, 73. The district court stated that Ridgard's guideline range for the Grade C violation was three to nine months' imprisonment, that Ridgard faced a "two-year maximum statutory penalty" of imprisonment, and that his "maximum term for supervised release is life." Doc. 98 at 4; *see* 18 U.S.C. § 3583(h).

Ridgard's counsel argued that the probation office's recommended sentence—nine months' imprisonment followed by a lifetime of supervised release—was "inappropriate." Doc. 98 at 5, 22. Defense counsel acknowledged that Ridgard, upon his release from a lengthy term of imprisonment, "had a couple of mishaps in his initial terms of supervised release." *Id.* at 5–6. But counsel contended that such "mishaps" had occurred because Ridgard had returned to "a society where the Internet has now become more frequently used" and "smartphones have become more popular." *Id.* at 6. Counsel also contended that such mishaps should be mitigated by Ridgard's "forthright and forthcoming … admissions to

Probation," even if it had taken Ridgard "a little bit of time" to make those admissions. *Id.* at 6. Further, counsel asserted that Ridgard was "not coming to the Court today to say, you know what, I can't do supervision, max me out in my time that I can serve in incarceration, and then say that I'm no longer a good candidate for supervision." *Id.* at 7. Counsel asserted that Ridgard was "saying, yes, I like supervision in that it helps me get back on track." *Id.* at 8. Counsel contended that sentencing Ridgard to serve three to five months' imprisonment followed by five years' supervised release would be appropriate. *Id.* at 22.

The court said that, in assessing the pertinent 18 U.S.C. § 3553(a) factors, it would not ignore the facts that Ridgard had admitted to the probation office indicating Ridgard's danger to the public. Doc. 98 at 10–11. The court emphasized that Ridgard, shortly after serving 151 months in prison, began viewing child pornography (on the tablet that he had bought, on a co-resident's phone, and on a friend's phone). *Id.* at 11, 17–19.

Further, the court emphasized the admitted-to fact that Ridgard had had contact with children while on supervised release. Doc. 98 at 11. And the court, upon finding the "exact language" of Ridgard's "supervised release terms," pointed out that Ridgard's contact with children had violated the supervised-release condition that he shall "have no direct contact with minors

11

under the age of 18 without written approval of the Probation Office and shall refrain from entering into any area where children frequently congregate … ." *Id.* at 15; *see* Doc. 46 (original judgment) at 4. Although the court acknowledged that Ridgard had not been charged with violating the no-contact-with-children condition, the court contended that "it's undeniable that the terms of supervised release are being ignored." Doc. 98 at 16. And the court emphasized the importance of that condition given that Ridgard's original offense conduct had involved "an attempt online to solicit sex with a notional 10-year-old and … showing child pornography to demonstrate he was not a police officer." *Id.* at 15–16.

The United States, like the probation office, sought a post-revocation sentence of nine months' imprisonment followed by "a lifetime term of supervised release." Doc. 98 at 23–31. The United States explained that Ridgard's candor and admissions to the probation office had not been entirely voluntarily because the admissions had not occurred until Ridgard had failed a polygraph or otherwise believed that the probation officer would find out the truth. *See* Doc. 98 at 23–29. Further, the United States emphasized that Ridgard's conduct of viewing child pornography while on supervised release, which was the same type of conduct involved in the underlying case, showed

12

that Ridgard had "returned to this compulsion almost immediately upon release from prison." *Id.* at 30.

Before pronouncing sentence, the district court explained that it had reviewed the underlying case—which "you can tell from [the court's] familiarity with the facts"—as the court did for every supervised-release revocation case where the court had not been the original sentencing judge. Doc. 98 at 34–35. The court then discussed the conduct underlying Ridgard's offenses as set forth in the PSR. Doc. 98 at 35–38. The court first emphasized that Ridgard had sent child-pornography images to an undercover agent (posing as a mother of a 10-year-old daughter) to prove that Ridgard was serious about his desire to meet the child and was not the police. *Id.* And the court emphasized that Ridgard not only had maintained a child-pornography collection despite knowing that "possessing child pornography was wrong and against the law" but also had been sophisticated enough to conceal his child-pornography collection on an external hard-drive, rather than his main computer. *Id.*

The court considered that, after serving 151 months in jail and beginning supervised release, Ridgard almost immediately returned to his same ways. Doc. 98 at 38–39. He had accessed the internet to view child pornography, had destroyed a tablet potentially to conceal the child pornography, and had had

13

contact with children. *Id.* Further, the court found that Ridgard had not been as forthcoming with the probation office as defense counsel had described. *Id.*

Concluding that the guidelines were inadequate, the court revoked Ridgard's supervision and sentenced him to serve "a term" of 22 months' imprisonment and, upon release from imprisonment, "a lifetime of supervised release." Doc. 98 at 39–40. The 2017 revocation judgment stated that Ridgard was to serve a total term of 22 months' imprisonment and that, upon release from imprisonment, he shall be on supervised release for a term of life. Doc. 79 at 2–3. All the special conditions imposed pursuant to Ridgard's original judgment remained unaltered and in effect. *Id.* at 5 (citing Doc. 46).

### III.   Ridgard's 2020 Revocation

In February 2019, upon his release from prison, Ridgard began serving supervised release. *See* Probation Office's Petition for Summons or Warrant for Supervised-Release Offender, dated Sept. 20, 2019 ("2019 Petition").[6] A few months later, Ridgard admitted to the probation office that, throughout the month of June 2019, he had been using his cellphone to access the internet. Probation Office's Violation Memorandum, dated Sept. 20, 2019 ("2019

---

[6]The 2020 Petition is included in the probation office's 2020 Violation Packet, *see* U.S. Supplemental Appendix, which the probation office provided the district court before the 2020 revocation hearing.

Violation Memo") at 1. Ridgard specifically had accessed the Wi-Fi signals while riding the bus and the train. *Id.*

Further, Ridgard admitted to the probation office that "his purpose for being online was to research alternatives that would satisfy his sexual desires for minors." *Id.* To that end, Ridgard stated that he was interested "in raising goats and chickens due to his interest in having sex with them as an alternative to minors." *Id.* Ridgard also stated that he recently had cleared his web-browsing history. *Id.* A subsequent forensic examination of Ridgard's cellphone revealed: (1) eight saved Wi-Fi networks—two of which were from the bus and the train that Ridgard had admitted to accessing, and (2) numerous online stock photos, several of which were images of goats, that had been created between May and June 2019. *Id.*

## A.   Violation Petition

In September 2019, the probation office petitioned the district court to issue a warrant for Ridgard's arrest because he had violated his supervised-release conditions by accessing the internet without his probation officer's approval. 2019 Petition; *see* Doc. 46 at 4. In the petition, the probation office identified: Ridgard's two original offenses ("Count One: Transmitting Child Pornography in Interstate Commerce by Computer; Count Two: Possession of Child Pornography"); his original sentence ("151 months [of] custody followed

by a five-year term of supervised release"); and his 2017 revocation sentence ("22 months [of] imprisonment followed by a life term of supervised release"). 2019 Petition at 1. The probation office noted that all the special conditions imposed in Ridgard's original judgment were in effect. *Id.* (citing Doc. 46).

## B.    Revocation Hearing

At the revocation hearing, Ridgard admitted the violation, and the district court found him guilty. *See* Doc. 193 at 3. The court determined that, based on the Grade C violation, Ridgard faced a guidelines range of three to nine months' imprisonment. *Id.* And the court stated that Ridgard faced a statutory-maximum penalty of two years' imprisonment and a supervised-release term of life. *Id.*

Ridgard's counsel argued that a guideline-range sentence was warranted because Ridgard, unlike the last violations, had not viewed child pornography. Doc. 193 at 5. The United States, like the probation office, sought a sentence of two years' imprisonment to be followed by ten years' supervised release. *Id.* at 11–15. The United States contended that Ridgard, like before, had shown a "lack of candor" to the probation office and had admitted his violation only when "cornered." *Id.* at 12–13. The United States also contended that Ridgard's treatment providers had made it clear that "going from online viewing of child pornography to online viewing of animal sex is not an

16

approved part of the treatment program." *Id.* at 13. Further, the United States explained that the probation office "proposed reducing the guideline provision of life supervision because … the life term of supervised release has been somewhat demoralizing, and the ten-year goal, the Probation Office hopes, is something more attainable." *Id.* at 15.

The court explained that the circumstances of this violation, while concerning, caused the court less concern than Ridgard's prior violations. Doc. 193 at 16–19. The court revoked Ridgard's supervised release and sentenced him to serve "a term" of seven months' imprisonment and, upon release from imprisonment, "a ten-year term of supervised release." *Id.* The 2020 revocation judgment stated that Ridgard was sentenced to serve a total term of seven months' imprisonment and, upon release from imprisonment, shall be on supervised release for a term of 10 years. Doc. 127 at 2–3.

## IV.   Ridgard's 2025 Revocation

In May 2020, Ridgard was released from prison and began serving supervised release.[7] Probation Office's Petition for Warrant for Supervised-Release Offender, dated Jan. 30, 2025 ("2025 Petition") at 1.

---

[7]The 2025 Petition is included in the probation office's 2025 Violation Packet. *See* Ridgard's Appendix.

In December 2024, after Ridgard had been tested at a polygraph-test provider's office in Orlando, the provider informed the probation office that someone with the username "Trans Woman" had left a Google review on the provider's website. Probation Office's Violation Memorandum, dated Jan. 30, 2025 ("2025 Violation Memo") at 2. The profile picture for "Trans Woman" resembled Ridgard. *Id.*

In January 2025, when Ridgard reported to the probation officer, Ridgard initially denied using Google. 2025 Violation Report at 2. After further questioning, he eventually admitted that he had created a Gmail account, transwoman644@gmail.com, using an unauthorized cellphone that he had obtained several months before. *Id.* at 2. Ridgard also admitted that he had used the cellphone to search for child pornography. *Id.*

A subsequent forensic examination of that unauthorized cellphone revealed that, between July 2024 and January 2025, Ridgard had created usernames and profiles for two Gmail accounts (transwoman644@gmail.com, and noonenemo747@gmail.com) and ten applications. 2025 Violation Report at 3. Those apps included TextNow (username "Trans Woman"), Discord (username "kendra005367"), Zangi Private Messenger (username "Trans Woman"), Google Chat (username "Trans Woman"), Telegram (username "Gabriella"), and Signal Private Messenger (username "trans woman"). *Id.*

18

Following that forensic examination, a senior probation officer (who also served as a computer-forensic specialist) interviewed Ridgard. 2025 Violation Report at 3. Ridgard admitted that he had created those two email accounts and had downloaded the various apps. *Id.* He also admitted that he had known that the internet identifiers he had created must be registered with the Florida Department of Law Enforcement's Sex Offender Registry. *Id.* at 4. And he admitted that he intentionally didn't register the accounts so that he could conceal his possession of the unauthorized cellphone. *Id.*

Further, Ridgard admitted that he not only had searched for child pornography on that cellphone but also had succeeded in finding images of children between the ages of 6 and 12 (Ridgard's preferred age range for children) and had viewed images of nude children. 2025 Violation Memo at 2–3. Ridgard explained that he had searched for child pornography on DuckDuckGo, a private internet browser that deletes internet history (or retains only a limited history) and disturbs the complete forensic recovery of internet artifacts. *Id.* In the DuckDuckGo browser, Ridgard had bookmarked over 50 websites, many of which involved transexual pornography, zoophilia pornography, and sex stories related to adults having sex with children. *Id.* Ridgard admitted that the probation office had not granted him permission to access the internet. *Id.* at 4.

19

## A.    Violation Petition

After that interview, the probation office petitioned the district court to issue a warrant for Ridgard's arrest based on a dozen supervised-release violations. *See* 2025 Petition at 1–2. The petition charged that Ridgard had committed new criminal conduct by failing to register his internet identifier, in violation of Florida law, on 11 occasions between July 2024 and January 2025, *id.* at 1–2 (Violation Charges One through Eleven), and had used an unauthorized cellphone to access the internet and several apps without approval in January 2025, *id.* at 2 (Violation Charge Twelve).

In the petition, the probation office identified: Ridgard's two original offenses ("Count One: Transmitting Child Pornography in Interstate Commerce by Computer; Count Two: Possession of Child Pornography"); his original sentence; his 2017 revocation sentence; and his 2020 revocation sentence. 2025 Petition at 1. The probation office noted that all the special conditions imposed in Ridgard's original judgment were in effect. *Id.* (citing Doc. 46).

Further, the probation office identified the post-revocation sentencing options. 2025 Violation Memo at 4–5. As to each of Counts One and Two, upon finding a violation of supervised release, the district court may revoke the supervised release and impose a term of imprisonment of up to two years. *Id.*

20

at 4 (citing 18 U.S.C. § 3583(e)(3)). Those terms may be imposed concurrently or consecutively. *Id.* (citing 18 U.S.C. § 3584). If imprisonment is imposed, the court may order a new term of supervised release to follow. *Id.* Further, because Ridgard was charged with grade "B" violations, and because Ridgard had a criminal-history category of I at his original sentencing, the Sentencing Commission's policy statements provided a range of four to ten months' imprisonment. *Id.* (citing USSG §§ 7B1.1(a), 7B1.3(a), and 7B1.4(a)).

**B.    Revocation Hearing**

At the revocation hearing, the district court reviewed with Ridgard his potential revocation penalties, which included "a two-year maximum statutory penalty … as to each offense," "a maximum term of lifetime of supervised release," and a guideline range of "four to ten months' imprisonment." Doc. 194 at 7–8. Following the court's revocation plea-colloquy, Ridgard admitted all 12 violations, and the court found him guilty. *Id.* at 3–10.

Ridgard's counsel initially requested a sentence of "eight months concurrent with five years of supervised release to follow." Doc. 194 at 11. Ridgard's counsel explained why Ridgard was "requesting eight months," rather than a prison sentence at the "low end" of the guideline range: he acknowledged not only that this was his third time violating supervised release but also that all but one of his violations were Grade B violations. *Id.*

21

In response to that request, the court explained that it would not impose a guideline sentence and asked Ridgard's counsel to propose a reasonable sentence above the guideline range. Doc. 194 at 13. When Ridgard's counsel continued arguing why the initial request for "the eight months" was warranted, *id.* at 13–15, the court further elaborated its serious concerns about Ridgard's latest conduct on supervised release, *id.* at 16–18 (emphasizing Ridgard's "very strong interest in children," particularly those between the ages of six and twelve; his accounts with apps like Signal and Telegram that are designed to allow for covert communication; his recidivism; that nothing has deterred him; the need to protect society from pedophile). So Ridgard's counsel eventually proposed an alternative sentence of "a year with whatever supervised release to follow." *Id.* at 18–19.

The United States, along with the probation office, requested "a term of imprisonment of 18 months for each count and for those terms to run consecutively, for a total of 36 months of imprisonment, followed by ten years of supervised release." Doc. 194 at 20. The United States echoed the district court's concerns; noted Ridgard's nearly daily use of the private browser between September 2024 and January 2025; and emphasized his actions taken to conceal his browsing history and child pornography. *See id.* at 19–22.

The district court reiterated the sentencing factors considered and the concerns that it had discussed with Ridgard's counsel. Doc. 194 at 23–24 ("I don't know what I can do in terms of protecting the public or correcting your behavior and deterring you."). The court then revoked his supervised release and sentenced him to serve "a term" of 48 months' imprisonment. *Id.* at 24. The court specified that this term consisted of "24 months as to Count 1" and "24 months as to Count 2," the latter to run consecutively to the former. *Id.* at 25. The court further pronounced that, upon release from imprisonment, Ridgard would serve "a lifetime of supervised release on Count 1 and 2 to run concurrently." *Id.*

The court asked whether Ridgard's counsel had "[a]ny objection to the sentence or the manner in which it's been stated." Doc. 194 at 25. Ridgard's counsel said no. *Id.*

The court's revocation judgment states that Ridgard was sentenced to serve "a total term of" 48 months' imprisonment and that "[t]his term consists of a 24-month term as to Count One and a 24-month term as to Count Two, all such terms to run consecutively." Doc. 179 at 2. The judgment further states that, upon release from imprisonment, Ridgard "shall be on supervised release for a term of life." *Id.* at 3. This appeal followed. Doc. 180.

23

### *Standard of Review*

This Court ordinarily reviews de novo the legality of a sentence. *United States v. Pla,* 345 F.3d 1312, 1313 (11th Cir. 2003). This Court, however, will review only for plain error a sentencing argument that a defendant failed to raise in the district court. *See United States v. Smith*, 532 F.3d 1125, 1129 (11th Cir. 2008); *United States v. Aguillard*, 217 F.3d 1319, 1320 (11th Cir. 2000). Under the plain-error standard, the defendant must show that (1) the district court erred; (2) the error was plain; (3) the error affected his substantial rights; and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. *See United States v. Olano*, 507 U.S. 725, 732–37 (1993). And this Court will not review—even under the plain-error standard—an error that an appellant invited below. *United States v. Love*, 449 F.3d 1154, 1157 (11th Cir. 2006).

### Summary of the Argument

The district court did not plainly err at Ridgard's 2025 revocation hearing when the court sentenced him to serve two new terms of imprisonment to be followed by two new terms of supervised release. As an initial matter, Ridgard's counsel at that revocation hearing invited the district court to impose concurrent prison terms; in doing so, counsel necessarily invited the court to impose more than one prison term because there was more than one term of

24

supervised release to revoke. As a result, the invited-error doctrine precludes Ridgard from challenging the district court's imposition of two prison terms or otherwise challenging his revocation sentence based on his assertion that there was only one term of supervised release for the court to revoke.

But in any event, if this Court were to reach the merits of Ridgard's unpreserved sentencing challenge, Ridgard's challenge fails under the plain-error standard. Indeed, Ridgard has not shown that the district court plainly or clearly imposed just one term of supervised release at his original sentencing for his two child-pornography counts in 2006, at his first revocation of supervised release in 2017, and at his second revocation of supervised release in 2020. As a result, Ridgard cannot show that the district court plainly erred at his third revocation hearing in 2025 when it imposed two new terms of imprisonment to be followed by two new terms of supervised release.

## Argument and Citations of Authority

### The district court, upon revoking Ridgard's supervised release a third time, did not plainly err when it sentenced Ridgard to two imprisonment terms and two supervised-release terms.

A district court, upon revoking a defendant's term of supervised release, may impose a term of imprisonment and a new term of supervised release to follow imprisonment. 18 U.S.C. § 3583(e)(3), (h). If the defendant was serving

25

multiple supervised-release terms, the court may revoke all those terms, impose a prison term for each revocation, and run the prison terms concurrently or consecutively. *See* 18 U.S.C. §§ 3583(e)(3), 3584; *United States v. Quinones*, 136 F.3d 1293, 1294 (11th Cir. 1998) (affirming two consecutive prison terms imposed upon revocation of two concurrent supervised-release terms). If the offense that had resulted in the defendant's original supervised-release term is a Class C felony,[8] the post-revocation term of imprisonment may not exceed two years, 18 U.S.C. § 3583(e)(3), and the post-revocation term of supervised release ordinarily may not exceed three years (minus any post-revocation term of imprisonment imposed), *id.* § 3583(b)(3), (h). But, if the original offense was an offense under 18 U.S.C. § 2252A, the post-revocation term of supervised release may be any term of years up to life, *see* 18 U.S.C. § 3583(h), (k).

Ridgard argues for the first time on appeal that the district court, at his third revocation proceeding, had "only a single supervised release term to revoke" because, according to Ridgard, he "was serving and had only ever served a single term of supervised release." *See* Ridgard's brief at 1–4, 6–7. That argument, if correct, means that the court upon revoking his supervised release was authorized by statute to impose just one term of imprisonment (up

---

[8]Ridgard's two original offenses—transmission of child pornography under 18 U.S.C. § 2252A(a)(2)(B), and possession of child pornography under § 2252A(a)(5)—are both Class C felony offenses. *See* 18 U.S.C. § 3559(a)(3).

to 24 months) and one term of supervised release (up to life) to follow that singular term of imprisonment. *See* Ridgard's brief at 7–8 (citing 18 U.S.C. § 3583(e)(3), (h), (k)); *id.* (citing *United States v. Dillon*, 725 F.3d 362, 363, 368 (3d Cir. 2013), which explains that a district court, upon revoking a single supervised-release term, may not impose "multiple terms of reimprisonment and/or supervised release").

So, based on that argument, Ridgard newly claims that the court erred when it imposed two terms of imprisonment and two terms of supervised release, *id.* at 7–8, and that the resulting "sentence of 48 months in prison and two supervised release terms accordingly exceeds the statutory maximum," *id.* at 8 (citing *Dillon*, 725 F.3d at 368–69, which held that district court plainly erred by imposing "multiple terms of reimprisonment and supervised release" upon revoking a single term of supervised release, and that the "erroneous multiple-terms sentence" was prejudicial)). But, as explained next, the invited-error doctrine precludes him from challenging his sentence because he invited the multiple-terms sentence that he now claims is error. And, invited error aside, Ridgard has not shown that the court plainly erred in sentencing him.

**A.    The invited-error doctrine precludes review of Ridgard's challenge to the district court's imposition of his revocation sentence.**

It is "a cardinal rule of appellate review that a party may not challenge as error a ruling" that the party had invited. *United States v. Sirvestri*, 409 F.3d

27

1311, 1327 (11th Cir. 2005). The invited-error doctrine applies "when a party induces or invites the district court into making an error." *Id*. "Where invited error exists, it precludes a court from invoking the plain-error rule and reversing." *Id.*

In *United States v. Love*, for example, a defendant claimed that the district court "erred in sentencing him to a term of five years' supervised release," arguing that no supervised release was authorized or that the maximum term was one year. 449 F.3d 1154, 1156–57 (11th Cir. 2006). This Court held that the defendant was precluded from making that claim, and thus did not reach the merits of those arguments, because he had "induced or invited the district court to impose a sentence that included a term of supervised release." *Id.* at 1157. The defendant had done so by: acknowledging in his plea agreement and at his plea colloquy that supervised release could be imposed; raising no objection to the PSR's determination that the court impose up to five years' supervised release; requesting supervised release in lieu of additional jail time; suggesting that the court impose a term of two years' supervised release; and raising no objection at sentencing to a sentence including supervised release. *Id.* at 1155–57.

Here, Ridgard similarly invited the district court to impose multiple terms of imprisonment. Before the 2025 revocation hearing, the probation

28

office set forth the court's statutory sentencing options upon finding that Ridgard had committed one of the 12 violations charged. *See* 2025 Violation Memo at 4–5. The court could impose two new terms of imprisonment: one upon revoking Ridgard's supervised release as to Count One (his transmission-of-child-pornography offense of conviction), and one upon revoking his supervised release as to Count Two (his possession-of-child-pornography offense). *See id.* at 4; *see also* 2025 Violation Petition at 1. The maximum the court could impose for each of those prison terms was two years. 2025 Violation Memo at 4 (citing 18 U.S.C. § 3583(e)). The court could run those prison terms concurrently or consecutively. 2025 Violation Memo at 4 (citing 18 U.S.C. § 3584). And, if the court imposed a term of imprisonment, the court could order a new term of supervised release to follow. *Id.*; *see* 18 U.S.C. § 3583(h).

Ridgard did not object to those statements or otherwise dispute that the district court could impose up to a two-year term of imprisonment as to each of his two offenses of conviction. *See* Doc. 194. Nor did he object when the court stated at the revocation hearing that, if he were to admit the 12 violations charged, he'd face "a two-year maximum statutory penalty … as to each offense." Doc. 194 at 7–8.

Instead, after admitting all 12 violations, Ridgard asked the court to

sentence him to "*eight months concurrent* with five years of supervised release to follow." Doc. 194 at 11 (emphasis added). That "eight months concurrent" request, understood in context of this revocation proceeding and the probation office's 2025 Violation Memo and Petition, was a request for the court to impose two terms of eight months' imprisonment—one eight-month term for Count One; one eight-month term for Count Two—and to run them concurrently rather than consecutively.

In making that request, then, Ridgard expressly invited the court to impose *two terms* of imprisonment. And he necessarily acknowledged the basis for the court's authority to impose that multiple-terms sentence: Ridgard had been serving two supervised-release terms—one for Count One; one for Count Two—both of which the court would revoke based on his admitted violations.

As a result, Ridgard is precluded from challenging the court's imposition of two terms of imprisonment or otherwise challenging his revocation sentence based on his argument that he had been serving only a single term of supervised release. *See Love*, 449 F.3d at 1155–57. This Court need not reach the merits of his arguments challenging his revocation sentence. *Id.* at 1157.

## B. In any event, Ridgard has not shown that the district court plainly erred in imposing his revocation sentence.

If this Court reaches the merits of Ridgard's sentencing challenge, this Court should review it only for plain error because he failed to raise it at his

2025 revocation proceeding in the district court. *See United States v. Aguillard*, 217 F.3d 1319, 1320 (11th Cir. 2000). Ridgard simply made no argument in the district court suggesting that he had been serving just one supervised-release term even though his original sentence had been for two counts of conviction.

Nor did Ridgard otherwise object when the court imposed two terms of imprisonment (one for revoking supervised release in Count One; one for revoking supervised release in Count Two) and two new terms of supervised release (one to follow each prison term). Indeed, he did not dispute the probation office's statements providing that the district court was statutorily authorized to impose a prison term of up to two years as to each of Counts One and Two, to run those terms of imprisonment concurrently or consecutively, and to impose a new term of supervised release to follow each term of imprisonment imposed. *See* Doc. 194. To the contrary, he asked the court to impose multiple terms of imprisonment. *Id.*; *see supra* Argument Section A. And he did not object when the court stated that his revocation penalties included "a two-year maximum statutory penalty … as to each offense," Doc. 194 at 7–8; when the United States asked the court to impose two consecutive terms of 18 months' imprisonment, totaling 36 months' imprisonment, *id.* at 20; when the court pronounced two consecutive terms of

31

24 months' imprisonment, totaling 48 months' imprisonment, to be followed by two concurrent lifetime terms of supervised release, *id.* at 24; or when the court elicited objections to the sentence imposed, *id.* at 25.

Contrary to Ridgard's suggestion on pages 8–9 of his brief, he cannot avoid the plain-error standard by couching this issue as whether the district court had "jurisdiction" to impose a sentence that "exceeds the statutory maximum." The district court unquestionably had "jurisdiction" to impose the sentence that it did. *See* 18 U.S.C. § 3231; *see also supra* Statement of Jurisdiction. If that sentence exceeds the maximum authorized by statute, or otherwise was "beyond the statutory power of the court to impose," then the sentence would be an illegal sentence, which is "subject to review as plain error" absent any objection to the sentence's legality in the district court. *See United States v. Cobbs*, 967 F.2d 1555, 1557–58 (11th Cir. 1992) (internal quotation marks omitted); *see also United States v. Smith*, 532 F.3d 1125, 1129 (11th Cir. 2008) (reviewing for plain error defendant's argument that his sentence exceeds statutory maximum where defendant did not raise the argument in the district court). So Ridgard, who never objected in the district court that his sentence exceeds the statutory maximum or otherwise argued that the court could not impose two prison terms, cannot escape plain-error review.

32

Under plain-error review, Ridgard must show an error that is "plain," that is, "clear" or "obvious," under current law. *United States v. Olano*, 507 U.S. 725, 734 (1993). He has not done so. As explained next, it is not clear or obvious that Ridgard, despite having been convicted of two child-pornography offenses, had only ever served just a single term of supervised release. And Ridgard has cited no on-point, controlling precedent directly resolving this issue. *See United States v. Lejarde-Rada*, 319 F.3d 1288, 1291 (11th Cir. 2003) ("[W]here the explicit language of a statute or rule does not specifically resolve an issue, there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it."). As a result, he cannot show that the district court plainly erred at the 2025 revocation hearing when it revoked two supervised-release terms and sentenced him to serve two new imprisonment terms followed by two new supervised-release terms.

**(1)    *At Ridgard's 2006 sentencing, the district court imposed an undivided sentence covering both counts of conviction.***

In 2006, after Ridgard had pleaded guilty to the two child-pornography offenses charged in Counts One and Two, the district court sentenced him to be imprisoned for "a term of 151 months" and, upon release from imprisonment, to be placed on supervised release for "a term of five years." Doc. 87 at 16. In pronouncing that sentence, the court did not mention Counts

33

One and Two much less specify the sentence—either the term of imprisonment or the term of supervised release—imposed as to each count. *Id.*

That sentence, much like the so-called "general sentence," was in the form of an undivided sentence on both counts. *See, e.g.*, *United States v. Moriarty*, 429 F.3d 1012, 1018, 1023–25 (11th Cir. 2005) (district court imposed general sentence when it sentenced defendant convicted of three child-pornography-related counts to "20 years in the Bureau of Prisons" and "a lifetime of supervised release" without specifying the sentence imposed on each count).[9] In effect, the court imposed two terms of imprisonment (one for each count)

---

[9]An undivided sentence on multiple counts is called a "general sentence" if the sentence "exceed[s] the maximum allowable sentence on one of the counts." *United States v. Moriarty*, 429 F.3d at 1018, 1023, 1025 (district court's imposition of "a lifetime of supervised release" at defendant's sentencing for three child-pornography counts constituted a "general sentence" because a lifetime of supervised release exceeded the statutory maximum for one of the three counts). Such a sentence "is not in the most desirable form." *Benson v. United States*, 332 F.2d 288, 289–90 (5th Cir. 1964) (sentence "should preferably specify punishment as to each separate count and indicate whether the sentences shall be served consecutively or concurrently"). That is because this form of sentence makes it difficult to determine the sentence imposed. *Id.* at 291 ("One thing sure about the so called 'general sentence' … is that no one … knows what the real sentence is."); *see also Moriarty*, 429 F.3d at 1018 (noting that "[i]t is difficult to determine the intention of the district court" when court imposed a general sentence). Thus, if an undivided sentence constitutes a general sentence (when the sentence exceeds one of the counts), this Court will vacate the sentence as an illegal sentence and remand it for the district court to clarify the sentence imposed as to each count. *Moriarty*, 429 F.3d at 1023, 1025.

34

for an overall term of 151 months' imprisonment, and two terms of supervised release (one for each count) for an overall term of 5 years' supervised release. *See, e.g.*, *United States v. Gresham*, 325 F.3d 1262, 1263 & n.1 (11th Cir. 2003) (where district court, at sentencing for defendant's five bank-robbery counts, sentenced defendant to "87 months in prison, to be followed by 60 months of supervised release" without specifying the sentence imposed for each count, this Court "interpret[ed] the sentence as having been imposed on each count, with all sentences to run concurrently"); *see also United States v. Eskridge*, 445 F.3d 930, 934 (7th Cir. 2006) (noting that *Gresham* "interpreted the sentence of supervised release as having been imposed on each count, to run concurrently" and that "[i]t wouldn't have made any sense for the judge to have imposed supervised release on only one count").

Although the general form of that sentence makes it difficult to determine the court's intent, the court likely imposed the same supervised-release term for both counts. Indeed, both Counts One and Two carried the same supervised-release penalties: as to each count, the court was authorized by statute to impose a term of supervised release from any number of years up to life and was recommended by the guidelines to impose a lifetime of supervised release. PSR ¶¶ 78, 80; *see also Moriarty*, 429 F.3d at 1023–24 & n.11 (lifelong term of supervised release was authorized by statute and

35

recommended by guidelines for defendant's two 2004 offenses under 18 U.S.C. § 2252A(a)). Also, the offenses charged in Counts One and Two were similar: both were child-pornography offenses under 18 U.S.C. § 2252A(a), class C felonies, and sex offenses. *See* PSR at 1; *id.* ¶ 80. Given that both counts were similar offenses that carried the same supervised-release penalties, the court likely imposed a five-year term of supervised release as to each count. (And those terms were concurrent, as statutorily required. *See* 18 U.S.C. § 3624(e).)

Ridgard argues that the district court—by pronouncing "a term" of five years' supervised release, Doc. 186 at 16—unambiguously imposed just one term of supervised release, period. Ridgard's brief at 7, 9. In other words, Ridgard interprets the court's pronouncement of "a term" as clearly imposing one term of five years' supervised release on just one child-pornography count and no supervised-release term on the other count.

It's not plain that Rigard's interpretation of "a term," however, is correct, let alone the only possible one. Indeed, applying that interpretation here would also require concluding that the district court—by pronouncing "a term" of 151 months' imprisonment, *see* Doc. 186 at 16—imposed one term of 151 months' imprisonment on just one child-pornography count and no term of imprisonment on the other count. This would mean that the court ultimately imposed: (1) a term of 151 months' imprisonment, to be followed by

36

a term of 5 years' supervised release, on one of Ridgard's child-pornography counts; and (2) no sentence—no term of imprisonment and no term of supervised release—on his other child-pornography count.

But nothing in the record suggests—much less makes it plain, clear, or obvious—that the district court intended to do so. Certainly, it would have been remarkable for the court to determine that one of Ridgard's two child-pornography offenses warranted no imprisonment and no supervised release. Had the court made that determination, the court surely would have clearly and expressly stated its intent to impose a sentence on one specific count and not the other. The court would not have done what it did here: generally pronounced "a term" of imprisonment and "a term" of supervised release without specifying any particular count to which the sentence applied.

For those reasons, Ridgard has not shown that the court's pronouncement of "a term" of supervised release plainly means that the court imposed just one term of supervised release on one of his child-pornography counts and no supervised-release term on the other. To be sure, the cases cited on pages 7–8 of Ridgard's brief have interpreted a sentencing court's pronouncement of "a term" of supervised release as imposing just one term of supervised release despite sentencing the defendant for multiple counts of conviction. *See United States v. Starnes*, 376 F. App'x 942, 945 (11th Cir. 2010);

37

*United States v. Dillon*, 725 F.3d 362, 366–68 (3d Cir. 2013).

But those non-binding cases are not on point: The courts there, unlike the district court here, did not use that same "a term" language in pronouncing the imprisonment portion of the sentence; instead, those courts used language that clearly specified the prison term imposed as to each count. *See Starnes*, 376 F. App'x at 943–44 (at sentencing for defendant's two robbery counts, district court sentenced defendant to "88 months imprisonment on each count, to run concurrently"); *Dillon*, 725 F.3d at 363 (at sentencing for defendant's three counts of conviction, district court sentenced him to prison for "a term of 322 months," and specified that "[t]his term consists of and a term of 262 months as to Counts 1 and 4 and a term of 60 months as to Count 2 to be served consecutively with the term imposed at Counts 1 and [4]"). In those cases, then, interpreting "a term" to mean just one term did not require concluding that the sentencing court imposed a term of imprisonment and supervised release on just one of the counts and imposed no sentence on the other counts.

That is not the case here. Given that the court here used the same "a term" language—and did not specify the sentence imposed as to either count—in pronouncing both the imprisonment and supervised-release portions of Ridgard's sentence, the more reasonable interpretation is that the court used "a term" to mean the aggregate period or amount of time to be served on both

38

counts. Under this interpretation, by pronouncing "a term" of five years' supervised release at Ridgard's original sentencing for his two child-pornography counts, the district court imposed two concurrent supervised-release terms for an aggregate period of five years' supervised release.

Ridgard, who has cited no controlling, on-point authority directly addressing the circumstances here, has not shown that the district court's pronouncement of his original sentence plainly imposed just one term of supervised release.

**(2)    *The court at the 2017 and 2020 revocations imposed a sentence covering both counts of conviction.***

Nor has Ridgard shown that the district court plainly imposed just one term of supervised release at his first and second revocation hearings. At those hearings, upon revoking Ridgard's supervised release, the district court again used the same "a term" language in pronouncing the imprisonment and supervised-release portions of the revocation sentence.[10] Doc. 98 at 39–40 (upon first revocation, sentencing Ridgard to serve "a term" of 22 months' imprisonment and "a lifetime of supervised release"); Doc. 193 at 16–19 (upon second revocation, sentencing Ridgard to serve "a term" of seven months'

---

[10]Although the district court did not specifically state that it was revoking Ridgard's supervised release for both counts of conviction, "nothing in the record suggests that the revocation applied to only one term of supervised release." *See United States v. Hollins*, 664 F. App'x 779, 781 n.1 (11th Cir. 2016).

imprisonment and, upon release from imprisonment, "a ten-year term of supervised release"). And the district court did not separately specify the sentence imposed for the revocation of each term of supervised release that Ridgard had been serving on his two child-pornography counts.[11] *See* Doc. 98 at 39–40; Doc. 193 at 16–193.

Given those circumstances, the district court at the 2017 and 2020 revocations appeared to once again impose an undivided sentence covering both counts, just like the court did at the original sentencing. Thus, the 2017 revocation sentence consisted of two terms of imprisonment (one for each count) for an overall term of 22 months' imprisonment and two concurrent terms of supervised release (one for each count) for an overall lifelong term of supervised release; and the 2020 revocation sentence consisted of two terms of imprisonment (one for each count) for an overall term of 7 months' imprisonment and two concurrent terms of supervised release (one for each count) for an overall term of 10 years' supervised release.

Ridgard again argues that the court, by pronouncing "a term" of supervised release, unambiguously imposed only one term of supervised release. Ridgard's brief at 7, 9. But, as explained above regarding the court's

---

[11]It is not plain that the district court must "impose separate sentences for each term of supervised release it revokes." Hollins, 664 F. App'x at 781.

pronouncement of the original sentence, that interpretation would require concluding that the court imposed just one term of imprisonment (to be followed by one term of supervised release) on just one of Ridgard's counts, and no term of imprisonment or supervised release on the other count. Yet, nothing in this record suggests that the court, despite Ridgard's violating the supervised release he had been serving on both counts, determined that only one count warranted punishment in the form of a reimprisonment and a new term of supervised release. Thus, Ridgard has not shown that the district court's pronouncement of sentence at his 2017 and 2020 revocation hearings plainly or unambiguously imposed just one term of supervised release. For that reason, his claim fails under the plain-error standard.

But there's another reason his claim fails: Ridgard has not shown that any error seriously affects the fairness, integrity, or public reputation of the judicial proceedings. *See United States v. Sosa*, 782 F.3d 630, 638 (11th Cir. 2015) (defendant failed to show plain error where fourth prong weighed against correcting claimed error). Based on Ridgard's two child-pornography offenses of conviction, the district court was authorized by statute to impose two prison terms and two supervised-release terms at the original sentencing and at each subsequent revocation of supervised release. Further, in light of Ridgard's demonstrated strong interest in children, his increasingly brazen and

41

egregious supervised-release violations, and the concomitant need to deter him and protect the public, *see supra* Statement of the Facts (Sections II–IV), the district court acted well within its discretion in imposing two statutory-maximum terms of imprisonment and supervised release at the third revocation, *see* Doc. 194 at 16–25. Given those circumstances, together with the ambiguity in this record regarding the sentence the court intended to impose at the original sentencing and first two revocations, allowing Ridgard's sentence to stand does not seriously affect the fairness, integrity, or reputation of judicial proceedings. Accordingly, Ridgard has not demonstrated plain error. He is entitled to no relief.

# Conclusion

The United States requests that this Court affirm the judgment and sentence of the district court.

Respectfully submitted,

GREGORY W. KEHOE
United States Attorney

HOLLY L. GERSHOW
Assistant United States Attorney
Deputy Chief, Appellate Division


By:    *s/ Germaine M. Seider*
GERMAINE M. SEIDER
Assistant United States Attorney
Appellate Division
Florida Bar No. 85968
400 N. Tampa St., Ste. 3200
Tampa, FL 33602
(813) 274-6000
germaine.seider@usdoj.gov

43

## Certificate of Compliance with Type-Volume Limitation

This brief, which contains 9,545 countable words under 11th Cir. R. 32-4, complies with Fed. R. App. P. 32(a)(7)(B).

# Certificate of Service

I certify that on December 8, 2025, I electronically filed the foregoing document with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

M. ALLISON GUAGLIARDO
Federal Public Defender's Office

*Counsel for Kenneth Ridgard*

s/ *Germaine Seider*
GERMAINE SEIDER
Assistant United States Attorney

Gkpr - no/12-02-25

*p_Ridgard, Kenneth_US response brief_FINAL 2067-0624-5893 v.1.docx*